**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JENICE BROWN, | ) CASE NO. 5:19-cv-02135 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| ANDREW SAUL, | ) |
| *Comm'r of Soc. Sec.*, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

Plaintiff, Jenice Brown (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 10). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On October 20, 2016, Plaintiff filed her application for DIB, alleging a disability onset date of September 29, 2016. (R. 8, Transcript ("Tr.") 538-539). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge

(ALJ).¹ (Tr. 455-484). Plaintiff participated in the hearing on June 5, 2018, was represented by counsel, and testified. (Tr. 426-445). A vocational expert (VE) also participated and testified. *Id*. On November 1, 2018, the ALJ found Plaintiff not disabled. (Tr. 421). On August 11, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On September 17, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12 & 13).

Plaintiff asserts a single assignment of error, arguing that the ALJ's residual functional capacity finding (RFC) was not supported by substantial evidence. (R. 12).

## II. Evidence

### A. Relevant Medical Evidence²

Prior to the alleged onset of disability of June 13, 2016, Plaintiff saw Roy Buchinsky, M.D., on August 8, 2015. (Tr. 621-623). Plaintiff had normal gait, no swelling in her joints, and she was referred to other physicians due to complaints of right shoulder and left ankle pain. *Id*.

On September 1, 2015, Plaintiff underwent an MRI of her left ankle, which revealed no evidence of internal derangement, no joint effusion, some degenerative changes, and diffuse subcutaneous swelling. (Tr. 694).

On March 3, 2016, Plaintiff saw rheumatologist Van Warren, M.D. (Tr. 670-675). On

---

[1] There is an indication in the decision that Plaintiff also filed a claim for supplemental security income (Tr. 410), however both parties indicate no such application exists in the record. (R. 12, PageID# 1378; R. 13, PageID# 1396). Defendant's brief indicates the alleged onset date was later amended by Plaintiff to June 13, 2016. (R. 13, PageID# 1396).

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Further, as Plaintiff has not challenged the ALJ's credibility determination, the court foregoes any recitation of Plaintiff's hearing testimony.

physical examination, Plaintiff had "good range of motion of the upper and lower extremity joints without joint effusions," "mild tenderness in the left ankle and in both shoulders resolved pain on passive range of motion of the shoulders," "no sclerodactyly, telangiectasias, digital ulcers," "straight leg raise is normal bilaterally in the seated position," "no peripheral edema," and "no muscle atrophy." (Tr. 672). Plaintiff was noted as having diagnoses of Sjogren's syndrome and systemic lupus erythematosus (SLE). (Tr. 674). Dr. Warren prescribed etodolac as needed for pain and considered starting hydroxychloroquine pending laboratory test results. (Tr. 675).

After her alleged onset date, on June 30, 2016, Plaintiff complained of discomfort involving her hands, swelling in her feet, and abdominal discomfort after taking etodolac. (Tr. 660). Dr. Warren observed Plaintiff had good range of motion in the upper and lower extremities without joint effusion, and "slight soft tissue thickening in the proximal aspect of the digits of both hands and both ankles." *Id*. Dr. Warren noted Plaintiff had a history of SLE, was status post left thyroid lobectomy, and had right sided lymph node enlargement in the neck. *Id*. Plaintiff was started on hydroxychloroquine. *Id*.

On February 27, 2017, Plaintiff presented to the ER after being struck by an automobile. (Tr. 721). She complained of right sided pain and head pain. (Tr. 727). She was discharged the same day. (Tr. 730). X-rays and CT scans were largely unremarkable for acute fracture dislocation or bony abnormality, though the cervical x-ray revealed spondylosis with disc encroachment upon the thecal sac at C3-4 and C5-6. (Tr. 736-737, 738, 756-760). On examination, she had "normal ambulation and gait." (Tr. 735).

On April 20, 2017, Plaintiff saw primary care physician Tamer Hassan Ahmed, M.D., for the first time. (Tr. 782-785). She reported previously losing her insurance and sought to establish

3

care. (Tr. 782). Plaintiff reported multiple joint swelling and diagnoses of SLE and Sjogren syndrome. *Id*.

On May 4, 2017, Plaintiff saw rheumatologist Taik Kim, M.D., to establish care for possible SLE. (Tr. 795). On examination, Plaintiff had right shoulder pain through full range of motion and reported tenderness in the hips. (Tr. 797). She had good muscle tone and strength. (Tr. 797). Dr. Kim assessed "possible SLE vs sjorgens: labs unavailable from UH," "non-specific areas of arthralgia w/o swelling," right shoulder pain likely degenerative, right neck pain, and right hand numbness. (Tr. 798). Dr. Kim ordered further laboratory testing and x-rays. *Id*. X-rays yielded an impression of mild glenhumeral osteoarthritis of the right shoulder, mild midfoot and 1st metatarsophalangeal joint osteoarthritis of her right foot, mild midfoot osteoarthritis of her left foot, moderate to advanced multilevel degenerative disc disease of the cervical spine, and mild degenerative osteoarthritis of the hands/wrists. (Tr. 806-810).

On May 5, 2017, Plaintiff presented to the ER with right shoulder and right-sided back pain. (Tr. 815-835). On physical examination, Plaintiff had right paraspinal/trapezius tenderness to palpation, positive "soup can" test on the right, and right-sided mid to low thoracic tenderness and pain on palpation. (Tr. 817). She had 5/5 strength in all major muscle groups of the extremities. *Id*. Plaintiff was discharged after midnight. (Tr. 819).

On May 17, 2017, Plaintiff was seen by Antwon Morton, D.O., who diagnosed cervical myofascial pain syndrome and administered three right cervical paraspinal trigger point injections. (Tr. 836-837).

On July 7, 2017, Plaintiff reported to Dr. Ahmed, her family practice physician, who noted that Plaintiff was "seen in rheumatology clinic, medications unchanged[d], reports multiple joint pain, mainly ankles and shoulders. Symptoms seem to be controlled with current regimen.

4

[R]eceived 3 injections for hip and neck pains, they did help with her symptoms." (Tr. 877).

On July 25, 2017, Plaintiff returned to the ER with a flu-like illness. (Tr. 901-907). Plaintiff was admitted and discharged on August 2, 2017. (Tr. 908). She had no restrictions except for no heavy lifting and no strenuous activity. (Tr. 909). She was started on steroids and hydroxychloroquine, and given nocturnal oxygen during her stay. *Id*.

On July 26, 2017, Stanley Ballou, M.D., noted there was "no evidence for active lupus," and observed that "[l]aboratory studies disclose negative serologic tests for lupus and rheumatoid arthritis 2 months ago, including negative ANA." (Tr. 940).

On July 28, 2017, Dr. Ballou conducted a detailed joint examination and noted no swelling or tenderness in Plaintiff's hands, wrists, elbows, shoulders, hips, knees, or ankles. (Tr. 983).

On August 8, 2017, Plaintiff was seen in the rheumatology clinic by Ann Igoe, M.D. (Tr. 1229). It was observed that during her ER stay, Plaintiff was started on a high dose of steroids with quick improvement of her symptoms. *Id*. She had no issues with activities of daily living. *Id*.

On September 11, 2017, Plaintiff saw Dr. Igoe who conducted a joint examination and noted no abnormalities, full range of motion, and 5/5 grip strength. (Tr. 1239). Plaintiff's hips and knees were also unremarkable, but there was swelling in the ankles and subtalar pedal edema. *Id*. In addition, she had tenderness in her cervical spine. *Id*. She was advised to return in six to eight weeks if she does not relocate to Atlanta. (Tr. 1240).

On February 27, 2018, Plaintiff was seen by Sheila Kennedy, M.D., to establish care after moving to Atlanta. (Tr. 1314). Plaintiff reported muscle aches and joint pain, as well as frequent and severe headaches. *Id*. On physical examination, Dr. Kennedy noted Plaintiff was overweight and had limited ambulation. *Id*. Plaintiff had normal motor strength, limited range of motion,

5

bilateral knee crepitus, and no edema. *Id*. On neurologic examination, Plaintiff had normal gait. (Tr. 1315). Dr. Kennedy noted Plaintiff had been off of her SLE medications since she relocated from Ohio; Dr. Kennedy renewed her medications and she was referred to rheumatology. (Tr. 1315). With respect to degenerative joint disease, Dr. Kennedy advised the use of knee brace/stabilizer. *Id*. Plaintiff informed the physician that she had just purchased a cane for ambulation. *Id*.

On March 27, 2018, Plaintiff again saw Dr. Kennedy for medication refills and a blood pressure check. (Tr. 1317-1320). Her physical examination results were largely unchanged. (Tr. 1319). Plaintiff had purchased a knee stabilizer and was instructed on its use. *Id*. Plaintiff was assessed with SLE, essential hypertension, gastroesophageal reflux disease (GERD), and degenerative joint disease involving multiple joints. (Tr, 1319-1320).

**B.  Medical Opinions Concerning Plaintiff's Functional Limitations**

On December 12, 2016, state agency physician Gerald Klyop, M.D. reviewed Plaintiff's records and completed an RFC assessment. (Tr. 451-452). Dr. Klyop concluded that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and stand/walk and sit for six hours each in an eight-hour workday. *Id*. Dr. Klyop did not assess any postural, manipulative, visual, communicative, or environmental limitations. (Tr. 452). He explained his findings as follows:

> Clmnt diagnosed w Lupus and COPD impacting her exertional abilities but good [range of motion] of [upper and lower extremity] joints [without] joint effusions and PACS image indicates liver, gallbladder, pancreas, spleen, adrenal glands, bowel loops normal, blood supply conventional, no free fluid visualized, decrease in liver lesions consistent with liver hemangiomas. XR chest coarsened pulmonary interstitium suggest chronic lung disease/copd unchanged from prior. No pneumothorax or definite airspace infiltrate, CT chest trachea/central airways are patent, no endobronchial lesion, lungs clear, thoracic aorta/main pulmonary artery and branches normal, cardiac chambers not enlarged.

6

(Tr. 452).

On March 10, 2017, Dorothy A. Bradford, M.D., examined Plaintiff at the request of the state agency. (Tr. 761-775). Plaintiff's manual muscle testing yielded normal (5 of 5) results, which were considered reliable. (Tr. 762). There were no muscle spasms, atrophy, spasticity, clonus, or primitive reflexes present. (Tr. 763). Range of motion was also within normal limits in all areas. (Tr. 763-765). Plaintiff's pulmonary function study also yielded normal results. (Tr. 767). Plaintiff told Dr. Bradford that she was diagnosed with lupus in 2015, which causes pain in the right shoulder and knees, as well as swelling in the left ankle and tingling in the right hand. (Tr. 772). Bilateral x-rays of Plaintiff's knees revealed minimal arthritis. (Tr. 774). Dr. Bradford opined that Plaintiff had "a normal exam and in [her] medical opinion no signs or symptoms to support a diagnosis of systemic lupus." (Tr. 775). Dr. Bradford found Plaintiff had no activity restrictions. *Id*.

On March 15, 2017, state agency physician Michael Delphia, M.D., reviewed Plaintiff's records and completed an RFC assessment. (Tr. 464-465). Dr. Delphia's opinion echoed Dr. Klyop's earlier assessment, concluding that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and stand/walk and sit for six hours each in an eight-hour workday. (Tr. 464). Dr. Delphia did not assess any postural, manipulative, visual, communicative, or environmental limitations. (Tr. 465).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when

she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

    1.        The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

    2.        The claimant has not engaged in substantial gainful activity since July 13, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3.        The claimant has the following severe impairments: degenerative joint disease affecting multiple joints; lupus; degenerative disc disease of the cervical spine; and gastroesophageal reflux disease (20 CFR 404.1520(c) and 416.920(c)).

    4.        The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5.        After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

    6.        The claimant is capable of performing past relevant work as a medical clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

    7.        The claimant has not been under a disability, as defined in the Social Security Act, from July 13, 2016, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

(Tr. 412-421).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial

9

evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

In her sole assignment of error, Plaintiff asserts the ALJ erred by finding that she retained the ability to perform to perform a full range of light work. (R. 12, PageID# 1387). Plaintiff contends this finding lacks the support of substantial evidence, because it was based on "uninformed State agency opinions, who were without the ability to consider critical objective evidence in the record." *Id*. Further, Plaintiff submits the ALJ inappropriately substituted his own judgment for that of a medical professional. *Id*.

A claimant's RFC is an indication of an individual's work-related abilities *despite* his or her limitations. 20 C.F.R. § 404.1545(a)(1).[3] An ALJ must review and consider all the evidence,

---

[3] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—the ALJ's decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. Appx 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc.*

but the responsibility for assessing the claimant's RFC remains with the ALJ. 20 C.F.R. § 404.1546(c).

The ALJ's decision explicitly ascribes "significant weight" to the opinions of State Agency physicians Drs. Klyop and Delphia. (Tr. 419). The ALJ further explained as follows:

> Turning to the function-by-function assessment, the consultants' emphasis on the minimal arthritis on the imaging studies and unremarkable consultative exam fully comports with the light work restriction. Although the consultants did not have the opportunity to review the record beyond March 2017, the evidence received through the hearing level did not provide a sufficient basis to depart from this assessment. As detailed above, the claimant's exams from April 2017 to March 2018 indicated few, sporadic abnormalities, which did not consistently manifest (Exs. 8F, 7-10, 20-24; 10F, 1-4, 7-14, 07, 131, 353-355, 362-364; 12F, 1-14). For these reasons, the undersigned gives significant weight to the State agency consultants' assessments, to the extent consistent with the record as a whole.

(Tr. 419).[4]

State agency medical consultants, who are non-treating sources, are considered acceptable medical sources. The regulations state that ALJs "will consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants" 20 C.F.R. § 404.1513a(b), but they are "not required to adopt any prior administrative medical findings." 20 C.F.R. § 404.1513a(b)(1). Nevertheless, because said "medical or psychological consultants are highly qualified and experts in Social Security disability evaluation," ALJs must consider their opinions. *Id.* Moreover, State Agency opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of*

---

*Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

[4] The ALJ also ascribed partial weight to the opinion of the consultative examiner, Dr. Bradford, finding that the opinion "wholly aligns with the contemporaneous exam, which as detailed above, was grossly unremarkable." (Tr. 420). Nevertheless, the ALJ did not wholly adopt the opinion, which assessed no activity restrictions, as the ALJ concluded the episodic instances of joint tenderness warranted a restriction to light work. *Id*.

11

*Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, an RFC determination that is based upon the medical opinions of State Agency consultants is generally supported by substantial evidence.

Nevertheless, Plaintiff argues that the ALJ's reliance on the opinions of non-examining State Agency physicians violates the substantial evidence rule, because the opinions stem from March 2017 or earlier, and the record contains subsequent doctors' visits and objective tests that ostensibly demonstrate a deterioration in her functional abilities. (R. 12, PageID# 1389-1391). As stated above, the ALJ recognized that the State Agency physicians did not have the opportunity to review the record beyond March 2017, but concluded that the additional evidence did not provide a sufficient basis to depart from the assessment of the State Agency opinions. The ALJ noted that medical exams from April 2017 to March 2018 revealed "few, sporadic abnormalities, which did not consistently manifest." (Tr. 419). Plaintiff takes issue with this

12

statement, and asserts it is tantamount to the ALJ improperly interpreting raw medical data. (R. 12, PageID# 1391).

The court disagrees. The ALJ does not attempt to interpret the x-rays or CT scans, nor does the ALJ attempt to assign specific functional limitation(s) to the diagnoses or impressions stemming from those results. Rather, the ALJ carefully considered Plaintiff's examination notes when observing that symptoms did not consistently manifest themselves therein. The ALJ even points out that Dr. Kennedy, who did not start treating Plaintiff until February of 2018, advised Plaintiff to engage in 45 to 60 minutes of cardiovascular exercise at least three days per week. (Tr. 419, citing Exh. 12F, 10). The ALJ further identified inconsistencies and ambiguities in Dr. Kennedy's treatment notes:

> The undersigned gives particular attention to the clinical signs related to ambulation across the claimant's most recent records. She re-established primary care in February 2018 with S. Kennedy, M.D., upon relocating to the Atlanta, Georgia area. Although the claimant implied at the hearing that she purchased a cane pursuant to her doctor's recommendation, the exam notes indicate that she appeared at the exam with the cane having already purchased the device (Ex. 12F, 1-9). Dr. Kennedy's notes for the February 2018 [appointment] are internally inconsistent. The exam findings indicate that the claimant had "limited ambulation" but contemporaneously note a normal gait and ambulation (Ex. 12F, 1-9). Dr. Kennedy's observation of normal motor strength appears inconsistent with the claimant's alleged need for an assistive device. Although Dr. Kennedy documented bilateral knee crepitus, limited range of motion at the knees and advised use of a knee brace or stabilizer, no treating source previously noted such abnormalities, which indicated that these findings are not dispositive of her longitudinal functioning. The claimant returned to Dr. Kennedy in March 2018, where she again exhibited "limited ambulation," bilateral knee crepitus, and limited range of motion at the knees (Ex. 12F, 11-14 ). The exam note does not clearly illustrate the nature of the claimant's ambulatory capacity. Of particular significance, there is no indication that she appeared with a cane, which further supports the inference that she does not require an assistive device.

(Tr. 417) (footnote omitted).

The court finds nothing in the ALJ's analysis akin to the interpretation of raw medical data.

The ALJ's analysis, that Dr. Kennedy's treatment notes do not provide a basis for departing from the State Agency opinions, is sufficiently explained and is not against the substantial weight of the evidence.

Further, there is little support for the proposition that an ALJ errs by relying on a medical opinion simply because there exists evidence in the record that post-dates the opinion. A number of decisions have rejected similar arguments. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence that was developed post-dating those opinions); *Patterson v. Comm'r of Soc. Sec.*, No. 1:16cv110, 2017 WL 914272 at *10 (N.D. Ohio Mar. 8, 2017) ("ALJ may rely on a state agency reviewer who did not review the entire record, so … long as the ALJ also considers the evidence post-dating the opinion.") (Knepp, M.J.); *Pence v. Comm'r of Soc. Sec.*, No. 1:13cv287, 2014 WL 1153704 at *13 (N.D. Ohio Mar. 20, 2014) (finding no error where the ALJ explained that weight was given to non-treating physicians' opinions because they were generally consistent with evidence of record and where the ALJ considered relevant evidence that was developed after the issuance of those opinions) (McHargh, M.J.). One decision aptly summarized this point: "[i]f the Court were to adopt the Plaintiff's argument, any consultative examiner should be summarily dismissed if their opinion was submitted without full review of a plaintiff's medical record or predated any treatment records. ***The Court is unaware of such a rule*** and finds no error in the weight assigned [to the consultative examiner]." *Grant v. Colvin*, No. 3:14cv399, 2015 WL 4713662 at *13 (E.D. Tenn. Aug. 7, 2015) (emphasis added); *see also Jenkins v. Colvin*, No. 2:13cv0083, 2016 WL 5724229 at *7 (M.D. Tenn. Sept. 30, 2016) ("Plaintiff points to no authority requiring a consultative examiner's opinion to be rejected based on a failure to

review case management notes and medication management visits.").

In some respects, it is Plaintiff that asks the court to look at the treatment notes and objective tests and to essentially offer a medical opinion by concluding that they demonstrate a significant deterioration in her symptoms. "This Court may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387-88 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)). Although there may be circumstances in which a court could make such a judgment, where the deterioration is so obvious and manifestly supported by the record, this is not such a case.

To the extent Plaintiff argues that an additional consultative examination was necessary, the court agrees with the Commissioner's contention that it is Plaintiff's burden to provide medical evidence showing the severity of Plaintiff's impairments and how it affects her functioning. With respect to the RFC, the regulations specifically state "[i]n general, you [the claimant] are responsible for providing the evidence we will use to make a finding about your residual functional capacity…. However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources." 20 C.F.R. § 1545(a)(3). It is the claimant's burden to prove that she is disabled within the meaning of the Act, and to establish that her impairments render her unable to engage in any substantial gainful activity. See, e.g., *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Kafantaris v. Berryhill*, No. 1:17CV568, 2018 WL 1157762, at *23 (N.D. Ohio Feb. 2, 2018), *adopted by*, 2018 WL 1122123 (N.D. Ohio Mar. 1, 2018); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). Further, as explained above, Plaintiff has failed to demonstrate that

subsequent changes in her condition during the approximately twenty months that elapsed between the first consultative examination and the ALJ's decision were so significant as to require a second consultative examination. Ultimately, the claimant bears the burden of proving an entitlement to benefits. *Boyes v. Secretary, HHS*, 46 F.3d 510, 512 (6th Cir. 1994).

Plaintiff, however, has not shown that he ALJ committed error in reaching the underlying decision. Rather, the ALJ's decision is supported by substantial evidence, as explained above, and Plaintiff's single assignment of error is not persuasive.

### VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 17, 2020